# EXHIBIT

# A

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | Case No. 23-bk-02771-HWV |
| PENN CENTER HARRISBURG, L.P. | : | |
| Debtor | : | Chapter 11 |
| | : | |
| | | |
| PENN CENTER HARRISBURG, L.P. | : | |
| Movant | : | |
| | : | |
| v. | : | |
| | : | |
| FULTON BANK, UPMC, CITY OF | : | |
| HARRISBURG, DAUPHIN COUNTY | : | |
| TAX CLAIM BUREAU, | : | |
| HARRISBURG CITY SCHOOL | : | |
| DISTRICT | : | |
| Respondents | : | |

## MOTION OF PENN CENTER HARRISBURG, L.P. TO SET SALE PROCEDURES AND TO APPROVE SALE OF REAL PROPERTY AND PERSONAL PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS

Penn Center Harrisburg, L.P. ("Debtor" or "Penn Center") by and through its

counsel, Cunningham, Chernicoff & Warshawsky, P.C., and pursuant to Sections 105,

363(b), (c), (f), (k), and (m), and 365, of Title 11 of the United States Code, 11 U.S.C.

§§101 et seq., (the "Bankruptcy Code" or "Code") and Rules 2002, 6004, 6006, 9013, and

9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), hereby

moves this Court for entry of an Order authorizing the herein-described sale free and clear

of all liens, claims, encumbrances, and other interests asserted against the Debtor's real

property located at and known as 2601 N 3rd Street, 2643 N 3rd Street and 349 Wiconisco

Street, Harrisburg, Dauphin County, Pennsylvania (the "Real Property") and personal

property including, but not limited to, equipment and furniture (the "Personal Property"),

as well as a 1999 Chevrolet Suburban, a 1998 Ford Pickup and a 2019 Ford F-250 (the "Vehicles"), as follows:

*NOTICE TO PERSONS RECEIVING THIS MOTION: YOUR RIGHTS MAY BE AFFECTED.*

## JURISDICTION

1.    This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §1334.  This matter is a core proceeding pursuant to 28 U.S.C. §157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

## BACKGROUND

2.    On December 7, 2023, the Debtor filed a voluntary Chapter 11 Petition under the United States Bankruptcy Code.

3.    The Debtor Pennsylvania limited partnership engaged in the ownership and management of real estate (the "Business").

4.    The Debtor is in possession of its property and, as Debtor-in-Possession, is operating its Business and managing its property.

5.    The Debtor owns the Real Property.  The Real Property expressly includes any rights the Seller as owner of the Real Property has to that certain Cross Easement Agreement, Access and Parking Garage Easement Agreement and Walkway Easement Agreement (collectively, the "Easements") granted to the Seller by an entity formerly known as Pinnacle Health Hospitals (PCH), now known as University of Pittsburgh Medical Center (UPMC) and recorded in the Dauphin County Recorder of Deeds Office

2

as to the title to the Real Property on December 30, 2004 in Book Number 5826 on Pages Number 322, 336 and 346, respectively.

6.      Portions of the Real Property are subject to various leases held by the Debtor (the "Leases"). It is intended to assign such Leases to a Successful Bidder and the Debtor will file a separate Motion to Assign the Leases.

7.      The Debtor also owns certain items of personal property including, various equipment and furniture (the "Personal Property") and a 1999 Chevrolet Suburban, a 1998 Ford Pickup and a 2019 Ford F-250 (the "Vehicles").

8.      As part of the Debtor's reorganization, the Debtor intends to sell the Real Property, Personal Property and Vehicles (collectively the "Assets").

## THE PROPOSED SALE

9.      The Debtor has determined to market its Assets in order to obtain the highest and best offer for the Assets.

10.     In order to assist with the marketing of the Assets, the Debtor has engaged the services of NAI CIR Commercial Real Estate Services ("NAI/CIR").

11.     The Debtor has been attempting to sell the Real Property for a period of time in excess of one (1) year. The marketing has occurred through the efforts of Marcus & Millichap, a commercial real estate broker, and NAI/CIR. Also, pre-Petition, on two (2) separate occasions, the Debtor attempted to auction the Real Property through NAI/CIR and a company known as Ten-X.

12.     Until now, none of the efforts of the Debtor resulted in an agreement of sale.

3

13.     Pennmark had previously attempted to purchase the Real Property (the Past Transaction"). A dispute arose between the Debtor and Pennmark as to what was being purchased and the sale did not come to fruition. Thereafter, shortly before the Chapter 11 Petition was filed in this case, Pennmark filed a Writ of Summons against the Debtor and a L*is Pendes* as to the Real Property (the "Actions"). The Debtor may have a claim against Pennmark from the same transaction. As additional consideration, the Debtor and Pennmark are exchanging releases to the Past Transaction and Pennmark will satisfy or release the Actions.

14.     On or about January 29, 2024, Debtor entered into an Agreement of Sale (the "Agreement") with Pennmark Harrisburg Holdings, LLC ("Pennmark") for the total purchase price of $2,650,000.00. A true and correct copy of the Agreement, with attached Addendum, is attached hereto as Exhibit "A" and made a part hereof. The purchase price is allocated $2,600,000.00 for the Real Property, and $50,000.00 for the Vehicles. The Personal Property has minimal value.

15.     Through NAI/CIR, the Debtor intends to solicit higher and better offers, if any, and auction the Assets to additional potential buyers, subject to the terms and conditions of this Motion, and the Order approving the Procedures set forth herein.

16.     If Pennmark is the only offer received for the purchase of the Assets, the Debtor will file a Motion requesting approval of the buyer at a final hearing (the "Final Hearing").

17.     If there is more than one bidder for the Assets, following the auction being conducted, the Debtor will file a Motion requesting approval of a buyer (the buyer set forth

4

in this paragraph and in paragraph 15 above, as the case may be, is the "Successful Bidder")
at the Final Hearing.

18.     At the final hearing as to the Successful Bidder, the Assets will be requested
to be sold pursuant to 11 U.S.C. §363(f), free and clear of any liens, claims, interest and
encumbrances of every kind or nature whatsoever.

## LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS

19.     It is believed the following liens and encumbrances may exist on the Real
Property:

     a.     Fulton Bank ("Fulton") holds  liens on the Real Property.  Fulton is
believed to be owed nine (9) loans totaling approximately $12,000,000.00 (the
"Fulton Loans").

     b.     Fulton may hold a lien on the Personal Property, excluding Vehicles.

     c.     In addition, UPMC Pinnacle Hospitals f/k/a Pinnacle Health Hospitals
("UPMC") is believed to hold a mortgage lien on the Real Property subsequent in
priority to the liens of Fulton on which approximately $1,100,000.00 is owed.
Because the value of the Real Property is considerably lower than the amount owed
on the Fulton Loans, it is believed that UPMC is unsecured.

20.     It is believed that the Vehicles are unencumbered.

21.     The Debtor requests that the sale of the Assets be sold free and clear of all
liens, claims, encumbrances and other interests, including, but not limited to, the liens and
other matters above referenced, subject nonetheless to the Leases.

22.     All liens, claims, encumbrances, and other interests against or concerning the
Assets, as the case may be, shall transfer and affix to the sale proceeds in the same order
of priority as they enjoy in this bankruptcy case, subject to a Bankruptcy Court Order.

5

23.      As set forth above, the Debtor intends to expose the Assets to offers and bids, subject to the terms set forth in this Motion and the Order approving this Motion.  The Debtor proposes that such offers shall be solicited for the period up until 2:00 p.m. on February 19, 2024.

24.      Up until 2:00 p.m. on February 19, 2024, the Debtor will accept all offers for purchase of the Assets from third parties.  Such offers must be made in writing.  All offers are to be submitted to Nikolas S. Sgagias at NAI/CIR by electronic mail at nsgagias@naicir.com, with a copy to Robert E. Chernicoff, Esquire, 2320 North Second Street, Harrisburg, Pennsylvania, rec@cclawpc.com, (717) 238-6570, such to be received no later than 2:00 p.m., February 19, 2024.

25.      In the event there is more than one party providing offers as set forth above, an auction will be conducted telephonically or via Zoom at 12:00 p.m., on February 25, 2024.  Any party who wishes to bid may participate and shall arrange for such participation through Nikolas Sgagias at NAI/CIR.

26.      It is requested that the hearing to approve the sale procedures set forth in this Motion be set on February 6, 2024 (the "Procedure Hearing"), with a final hearing on approval of the Successful Bidder to occur on February 27, 2024 (the "Final Hearing").

27.      All offers to be submitted as set forth in this Motion must contain proof of financial ability to close on the transaction and shall not be subject to any financing or other such contingencies or due diligence period of time and, thus, all offers shall be without contingencies, except for approval of the Bankruptcy Court at the Final Hearing, and Fulton, if the proposed sale is not paying the Fulton Loans in full.

6

28.     At such auction, all bids higher than the first bid is to be made in an increment of least $75,000.00.  Subsequent bids are to be in increments of at least $50,000.00.  All bids shall occur on an open basis with all material terms of each bid being fully disclosed to all bidders.  Nonetheless, the Debtor reserves the right to change the amount of the increments.  In addition, following the auction, the Debtor reserves the right to continue to negotiate with bidders.

29.     All parties making offers must post a Fifty Thousand Dollar ($50,000.00) deposit , with proof of funding, and enter into an Agreement of Sale.

30.     Closing must occur within thirty (30) days after the entry by the Court of an Order approving the Successful Bidder.

31.     Following the auction set forth above, at the Final Hearing, as set by the Court, the Debtor will present the highest and best offer and request an Order approving the Successful Bidder (the "Sale Report").  The Debtor will also present such other and further pleadings as may be necessary to approve the Successful Bidder.  The Debtor may also identify a backup bidder.

32.     All creditors shall have an opportunity to object to the Successful Bidder following the filing of the Sale Report.

### THE PROPOSED SALE AND RELIEF REQUESTED

33.     The Debtor has suffered an inability to generate sufficient cash flow and pay all sums owed with respect to the Real Property, the Fulton Loans and other debts.  The Debtor may not be able to continue to operate if the sale does not occur.

34.     The Debtor asks that all of the Assets be sold free and clear of all liens, claims, encumbrances and other interests, including, but not limited to, the liens and other matters set forth above.  All liens, claims, encumbrances and other interests shall transfer and affix to the sale proceeds in the same order of priority as enjoyed immediately before the commencement of the Bankruptcy Case, subject to such assignments and claims as may exist and subject to further Bankruptcy Court Order.

35.     Fulton Bank shall have the right to credit bid up to the amount of its secured Claim.  Nonetheless, if Fulton is the Successful Bidder, then Fulton shall be responsible for the costs and expenses set forth below.

36.     A breakup fee of $75,000 is requested to be approved to be paid to Pennmark at closing as the initial bidder for the Assets and for its expenses and costs in the event that Pennmark is not the Successful Bidder of the Assets.  Such request shall be submitted prior to the Final Hearing on this Sale.

## PROPOSED DISTRIBUTION OF SALE PROCEEDS

37.     Debtor proposes to pay costs and expenses associated with the sale of the Assets at Closing as follows:

      a.     Any notarization or incidental filing charges required to be paid by Debtor as seller.

      b.     All other costs and charges apportioned to Debtor, as seller, under the documents contemplated thereby.

      c.     All costs associated with the preparation of the conveyance instruments and normal services with respect to closing, including payment of a total of $25,000.00, on account of legal fees and expenses owed to Cunningham, Chernicoff & Warshawsky, P.C., Debtor's counsel in connection with implementation of the sale, the presentation and pursuit of this Motion,

8

consummation of the sale, and otherwise in connection with this case, and subject to such approval by the Court of such fees and expenses. In the event fees and expenses are not approved by the Court at the time of closing on the sale, any fees and expenses not approved will be escrowed by Cunningham, Chernicoff & Warshawsky, P.C.

       d.     Past due real estate taxes and present real estate taxes pro rated to the date of closing on the sale.

       e.     Past due and present municipal charges and liens, pro rated, to the date of closing on the sale.

       f.     All transfer taxes which may be owed on account of the transaction shall be paid one-half by the Debtor and one-half by the Successful Bidder.

       g.     Payment of four percent (4%) commission of the total purchase price payable NAI/CIR.

       h.     A Breakup Fee of $75,000.00 in the event Pennmark is not the Successful Bidder.

       i.     Payment of all United States Trustee Fees incurred pursuant to the sale payable to the United States Trustee.

38.     After payment of the costs and expenses as set forth above, the net proceeds from the sale of the Real Property, shall first be paid to Fulton Bank up to the full amount owed on the Fulton Loans, as secured on the Real Property.

39.     The balance of the proceeds from the sale of the Vehicles, shall be held for distribution under a liquidating Plan of Reorganization or by a Chapter 7 Trustee, to be paid in the order of priority under the Bankruptcy Code.

40.     In the event there is a dispute as to the disposition of any sale proceeds, net of the aforesaid costs of sale identified above, or as to the costs proposed to be paid herein, then the sale shall proceed, and following closing of the sale, any disputed proceeds shall

9

be deposited in escrow by the Debtor's bankruptcy counsel, Cunningham, Chernicoff &
Warshawsky, P.C., pending further Order of this Court.

**GROUNDS FOR RELIEF**

**A.      Approval of Sale Pursuant to Bankruptcy Code Section 363(b).**

41.      Code Section 363(b)(1) provides, in relevant part, that "[t]he trustee, after
notice and a hearing, may use, sell, or lease, other than in the ordinary course of business,
property of the state." 11 U.S.C. §363(b)(1).

42.      The proposed use, sale or lease of property of an estate may be approved
under Code Section 363(b) if supported by sound business jurisdiction.  See, *Titusville
Country Club v. Pennbank (In re Titusville Country Club)*, 128 B.R. 396 (Bankr. W.D. Pa.
1991).

43.      Although Code Section 363 does not set forth a standard for determining
when it is appropriate for a court to authorize the use, sale or lease of Real Property, courts
within the Third Circuit and others, in applying this Section, have invoked the "business
judgment rule" as a standard.  See, *In re Exaeris*, 380 B.R. 741, 744 (Bankr. D. Del. 2008);
*In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991); *In re Industrial Valley
Refrig. & Air Conditioning Sup., Inc.*, 77 B.R. 15, 21 (Bankr. E.D. Pa. 1987) (proponent of
sale must show "sound business purpose" and meet other requirements of Code Section
363(b)(1)); *In re Lionel Corp*. 722 f.2d 1063, 108-69 (2d Cir. 1983) (a court may authorize
the sale of a Chapter 11 Debtor's Real Property when "a sound business purpose" dictates
such action).

10

44. As discussed herein, the Debtor's decision to sell the Real Property is an exercise of reasonable business judgment.

**B.     The Sale Should be Free of Liens, Claims, Encumbrances, and Other Interests**

45. Pursuant to Code Section 363(f) a trustee may sell property free and clear of liens, claims, and encumbrances if one of the following conditions is satisfied.

--applicable nonbankruptcy law permits sale of such property free and clear of such interest;

--such entity consents;

--such interest is in lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

--such interest is in bona fide dispute; or

--such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. §363(f). See, *In re Trans World Airlines, Inc.*, 322 F.3d 283, 288 (3d Cir. 2003) (court may approve sale "free and clear" provided at least one of the subsections is met); *Criimi Mae Services, L.P. v. WDH Howell, LLC (In re WDH Howell, LLC)*, 298 B.R. 527, 530 (Bankr. D. N.J. 2003).

46. Debtor believes that one or more conditions of Code §363(f) are satisfied in the present instance.

47. Debtor may sell its Real Property free and clear of any lien, claim, encumbrance, or other interest provided the Real Property sale price exceeds the aggregate value of all secured liens, namely, the value of the collateral. See, *Milford Group, Inc. V. Concrete Steps Unit, Inc. (In re Milford Group, Inc.)*, 150 B.R. 904 (Bankr. M.D. Pa. 1992).

11

48.     Accordingly, the Court should authorize the Debtor to sell the Real Property free and clear of any and all liens, claims, interest, and encumbrances, with such liens to be transferred and attached to the gross proceeds of the sale, with the same validity and priority that such liens had against the Real Property, and subject to the aforesaid costs of sale set forth in this Motion.

**C.    A Successful Bidder Should be Afforded All Protections Under Bankruptcy Code Section 363(m) as a Good Faith Purchaser**

49.     Code Section 363(m), 11 U.S.C. §363(m), provides:

> (m) The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or lease such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

50.     While the Bankruptcy Code does not define "good faith", the Court of Appeals for the Third Circuit ruling in *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986), held that:

> [t]he requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith statute as a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

788 F.2d at 147 (citations omitted). Debtor submits that the highest bid that may be generated at the herein contemplated auction and in conformity with the proposed bidding

procedures will represent the then current highest and best offer for the subject Real Property.

51.     Additionally, in response to any objection, because the sale is an auction sale, the Debtor may adduce facts at the sale hearing demonstrating that any Successful Bidder for the Real Property has proceeded at arm's length and that all concerned parties may be represented by their respective counsel.

52.     Accordingly, the proposed Sale Order will include a provision that the Successful Bidder of the Real Property is a "good faith" purchaser within the meaning of Code Section 363(m).  See, *Cinicola v. Scharffenberger*, 248 F.3d 110, 121-22 (3d Cir. 2001) (recognizing that the protections of Code Section 363(m) promote the policy of finality for third parties who have acted in good faith).  Debtor believes that providing any Successful Bidder with such protection will ensure that the maximum price will be received by the Debtor for the Real Property and that Closing of the sale will occur promptly.

**D.     Request that the Sale Approval Order be Effective Immediately.**

53.     Bankruptcy Rule 6004 provides that an order authorizing the use, sale, or lease of property, is stayed until the expiration of 14 days after the entry of the order, <u>unless</u> the court orders otherwise.  Fed.R.Bankr.P. 6004(h).  Because over time the Real Property may decrease in value and/or may be subjected to foreclosure sale by a secured creditor, Debtor requests that any order approving the sale transaction be effective immediately by declaring inapplicable the 14-day stay provided in Bankruptcy Rules 6004(h) and 6006(d).

Case 1:23-bk-02771-HWV    Doc 64-1    Filed 02/01/24    Entered 02/01/24 16:54:59    Desc
Exhibit A    Page 14 of 35

**STATEMENT REQUIRED UNDER LOCAL RULE 6004-4**

54.     The Debtor is a limited partnership and no other party has an ownership interest in the Real Property.

**CONCLUSION**

**WHEREFORE**, Debtor, Penn Center Harrisburg, L.P. respectfully requests that this Honorable Court enter an Order providing:

a.      approval of the sale process procedures set forth above;

b.      approval of the bid deadlines as presented herein;

c.      setting a hearing for the final approval on as to the Successful Bidder;

d.      approving the costs set forth above subject to final approval of the distributions at the Final Hearing on this matter; and

e.      award the Debtor such other and further relief as is just and proper.

Respectfully submitted:

CUNNINGHAM, CHERNICOFF
& WARSHAWSKY, P.C.

By:_____/s/ Robert E. Chernicoff_____
      Robert E. Chernicoff, Esquire
      Attorney I.D. No. 23380
      2320 North Second Street
      P. O. Box 60457
      Harrisburg, PA 17106-0457
      (717) 238-6570

Date: February 2, 2024

14



**NAI CIR**

Commercial Real Estate Services, Worldwide.
COMMERCIAL-INDUSTRIAL REALTY COMPANY
P.O. Box 8910, Camp Hill, Pennsylvania 17001-8910/Telephone 717-761-5070

# SALES AGREEMENT

1.  THIS AGREEMENT, dated January 30 ,20 24 , is between
2.  _____ Penn Center Harrisburg, L.P. _____ , Seller
3.  _____ AND _____
4.  _____ Pennmark Harrisburg Holdings, LLC _____
5.  _____ , Buyer.
6.  _____
7.  **1. PROPERTY:** Buyer hereby agrees to buy the property situate at   2601 and 2643 N 3 Rd Street and 349 Wiconisco Street (known,in order as One, Two,
8.  and Three Penn Center _____ , in the  City _____ of  Harrisburg , County of  Dauphin
9.  State of  PA _____ , together with the following improvements   approximatley 271,043 SF of office space and shell building space
10. as such is more fully described in Exhibit "A" attached hereto and made a part hereof
11. Approximate size of land:   6.36 acres
12. Optional identifiers: Tax Parcel #  10-042-001 _____ , Deed Book _____ and Page _____

13. **2. PRICE:** $   2,650,000.00
14. Deposit at signing of this Agreement, receipt of which is hereby acknowledged............................ $
15. $   50,000.00
16. Deposit on or before _____ ,20 _____ . ...................................... $
17. Cash or certified funds at Settlement........................................................................................ $   2,600,000.00
18. Total Price............................................................................................................................... $   2,650,000.00

19. ~~3. FINANCING: Within ten (10) days of Seller's approval of this Sales Agreement, Buyer shall make a completed mortgage application to a responsible~~
20. ~~mortgage lending institution or institutions and diligently pursue securing the Financing as follows: Amount of mortgage loan $~~
21. ~~Minimum Term_____years, Maximum Interest Rate_____% Amortization Term_____. If Financing within these terms or terms acceptable to~~
22. ~~Buyer is not obtained by_____,20___, Buyer or Seller may terminate this Agreement by providing written notice to the other, in which event the~~
23. ~~Deposit will be returned, less any expenses incurred by Agent on behalf of the Buyer.~~

24. **4. Special Clauses:**  SEE ADDENDUM
25. _____
26. _____
27. _____
28. _____
29. _____
30. _____
31. _____
32. _____

33. **5. BROKER(S):** NAI/CIR is agent for ☑ Seller   ☐ Buyer   ☐ Dual Agent for Seller and Buyer.  If NAI/CIR is acting as dual agent, _____
34. _____ the designated agent for Seller, and _____ is the designated agent for Buyer.
35. _____ is a licensed broker acting in this transaction as agent for ☐ Seller   ☐ Buyer
36. ☑ Transaction Licensee working with Buyer.  Licensees who represent Seller may perform services for the Buyer in connection with financing, insurance,
37. document preparation, and other similar services.  Buyer and Seller have received and reviewed the Consumer Notice adopted by the State Real Estate
38. Commission at 49 Pa. Code §35.336.  The definitions of business relationships and the duties required of licensees as set forth in the Notice are incorporated
39. here as though set forth at length.

40. **6. SETTLEMENT/TIME OF THE ESSENCE:** Settlement to be on  on or before March 1, 2024 _____ unless Buyer and Seller agree upon a
41. prior date. If the Buyer fails to make settlement by such date the purchase money in full on or before the settlement date, this Agreement shall be void and the
42. amount(s) paid by the Buyer shall be retained by Seller as liquidated damages. ~~Permission is granted NAI/CIR to extend, without further notice to the parties~~
43. ~~hereto, the settlement date and/or other dates provided in this Agreement for a period not to exceed ninety (90) days.~~  Time shall be of the essence to all terms
44. and conditions of this Agreement.
45. _____

46. **7. NON-REAL ESTATE EXTRAS:** All existing plumbing, heating, air-conditioning and lighting fixtures, and systems appurtenant thereto and forming a
47. part thereof, and other permanent fixtures, are included in the sale and purchase price.  None of the above mentioned items shall be removed from the property
48. or substituted by the Seller after the date of this Agreement.  Any remaining heating fuel stored on the Property at the time of settlement is also included under
49. this Agreement.  Seller hereby warrants that Seller will deliver good title to all of the articles described in this paragraph, and any other fixtures or items of
50. personalty specifically scheduled below and to be included in this Sale.  All other assets of Seller, including but not limited to assets listed on Seller's bankruptcy
51.  petition, are included in this Sale. All easements and appurtenances existing of record for the benefit of the Propert and/or its owner, are included in this Sale.

52. **8. POSSESSION:** Possession is to be given:  at settlement
53. _____

54. **9. SEWAGE AVAILABILITY:** The Property ☐ DOES   ☐ DOES NOT  have a community sewage system available to it.  Section 7 of the Pennsylvania
55. Sewage Facilities Act provides that no person shall install, construct, request bid proposals for construction, alter, repair or occupy any building or structure for
56. which an individual sewage system is to be installed, without first obtaining a permit.  Buyer is advised that before signing this Agreement Buyer should con-
57. tact the local agency charged with administering the Act to determine the procedure and requirements of obtaining a permit for an individual sewage
58. system.  The local agency charged with administering the Act will be the municipality where the Property is located or that municipality working
59. cooperatively with others.

60. **10. ZONING:** The Seller warrants that: the Property has the following Zoning Classification:  Institutional _____.  Failure of this Agreement to
61. contain the zoning classification (except in cases where the property {and each parcel thereof, if subdividable} is zoned solely or primarily to permit single-
62. family dwellings) will render this Agreement voidable at the option of the Buyer, and, if voided, any deposits tendered by the Buyer will be returned to the
63. Buyer without any requirement for court action. Seller further warrants that the present use  ☐ IS   ☐ IS NOT in compliance therewith. Seller further warrants
64. that the property  ☐ IS   ☑ IS NOT within the General Flood Plain District; the Property  ☐ IS   ☑ IS NOT within a Historic District and there exists no
65. notice of any uncorrected violation of housing, building, plumbing, electrical safety or fire ordinances and regulations, except as provided hereinafter:
66. _____
67. Seller will obtain for Settlement any and all certifications of such conditions required by the laws of this Commonwealth and of any municipal subdivision.
68. Buyer is advised that access to a public road may require issuance of a highway occupancy permit from the Department of Transportation.

69. **11. TITLE:** Title is to be conveyed by special warranty deed executed by Seller and shall be good and marketable, free of all liens and encumbrances, except-
70. ing zoning regulations, ordinances, reservations, historic preservation restrictions, privileges or rights of public service companies, easements and restrictions
71. of record or visible by inspection.  If Seller is unable to convey good and marketable title and such as will be insured by a reputable title company at regular
72. rates, Buyer may take such title as Seller can convey without abatement of Price or terminate this Agreement in which case Seller shall cause the deposit to be
73. returned to Buyer and shall reimburse Buyer's expenses for obtaining title binder coverage, premiums for hazard and flood coverage, mechanics lien insurance,
74. title search fees, appraisal fees and loan charges paid in advance to mortgage lender, if any.

75. **12. ADJUSTMENTS AT SETTLEMENT:** Real estate taxes shall be apportioned on a per diem basis in accordance with the fiscal year of the taxing bodies
76. to the date of settlement.  Rent, water and sewer rents, if applicable, shall also be so apportioned to the date of settlement.  Existing leases and security
77. deposits, if any, shall be assigned to Buyer at settlement.

78. **13. ASSESSMENTS:** Seller represents and warrants that no assessments or notice of assessments for public improvements have been made against the
Property which will not be paid in full prior to the time of final settlement.  Buyer will be responsible for any payment of assessments or notice of assessments
made after the date of this Agreement for any public improvements.

79. **14. TRANSFER TAXES:** Real estate transfer taxes will be divided equally between Seller and Buyer.

80. **15. RISK OF LOSS:** Seller assumes the risk of loss or damage to the Property through fire or other casualty prior to the date of settlement.

81. **16. SUBDIVISION AND SURVEY:** The Seller shall be responsible for, diligently pursue, and pay, the expense of satisfying any subdivision ordinance and
82. approval requirements necessary to convey the Property lawfully as well as any boundary surveys necessary to transfer title or remove title objections. If any
83. other surveys are necessary or desired, they shall be secured and paid for by the Buyer.

84. **17. HAZARDOUS WASTE:** Seller represents and warrants that Seller has no actual knowledge nor any reason to believe that hazardous waste or
85. contaminants (including asbestos and radon), that might result in liability to an owner of the Property for costs and expenses incurred to remediate such
86. condition, have ever been or are presently found or being disposed of on the Property. Furthermore, Seller agrees not to dispose of any hazardous waste or
87. contaminants on the Property during the term of this Agreement. Seller agrees to assume any and all liability and costs as a result of a breach of this or any
88. other herein contained representation and warranty and to indemnify Agents against any loss or claims against
89. Agents in connection therewith.

90. **18. UNDERGROUND STORAGE TANKS:** Seller represents and warrants that all storage tanks located on the Property (if any) whether aboveground or
91. underground, have been reported and registered with the appropriate state and/or local agency and/or department as required by law and have been and are
92. being maintained as required by law. In the event that the Seller has not complied with any applicable statute or provision, Seller hereby agrees to assume any
93. and all liability and costs incurred as a result of a breach or noncompliance with the applicable statute, and to indemnify Agents against any loss or claims
94. against Agents in connection therewith.

95. **19. INSPECTION:** It is understood that Buyer has inspected the Property or hereby waives the right to do so; and Buyer agrees to purchase it as a result of
96. such inspection and not because of or in reliance upon any representation made by the Seller or any officer, partner or employee of Seller, or by any Broker
97. (NAI/CIR and any cooperating Broker), or any of the Brokers' salespersons and employees; and Buyer agrees to purchase the Property in its present condition
98. unless otherwise specified herein.

99. **20. BROKERS' LIABILITY:** It is expressly understood and agreed between the parties hereto that the Brokers, their salespersons and employees, or any
100. officer or partner of Brokers, are acting as Brokers only and will in no case whatsoever be held liable, either jointly or severally, to either party for the
101. performance of any term or covenant of this Agreement or for damages for the nonperformance thereof.

102. **21. REAL ESTATE RECOVERY FUND:** A real estate recovery fund exists to reimburse persons who have suffered monetary loss and have obtained an
103. uncollectible judgment due to fraud, misrepresentation or deceit in a real estate transaction by a Pennsylvania licensee. For further information, call the
104. Pennsylvania State Real Estate Commission at (717) 783-3658.

105. **22. ENTIRE AGREEMENT:** This Agreement contains the whole Agreement between the Seller and the Buyer, and there are no other terms, obligations,
106. covenants, representations, statements or conditions, or otherwise of any kind whatsoever, concerning this sale. Furthermore, this Agreement shall not be
107. altered, amended, changed or modified, except in writing executed by the parties hereto.

108. **23. DEPOSITS:** All deposits, whether cash, check, judgment note or other instruments, and regardless of the person designated as payee, shall be retained by
109. the Agent for Seller in an escrow or fiduciary account in accordance with the Real Estate Licensing and Registration Act of the Commonwealth of
110. Pennsylvania and Rules and Regulations of the Real Estate Commission. Buyer agrees that Broker may transfer Buyer's deposit to another real estate licensee
111. with Buyer's prior consent. In the event of a dispute over entitlement to deposit, Broker will maintain the same in an escrow account until a resolution of the
112. dispute by agreement or final order of court. 49 Pa. Code 835.333(a)(8). Buyer and Seller agree that if Broker is joined in a suit over entitlement to deposit,
113. the party joining Broker shall pay Broker's costs and fees, including attorney fees.

114. **24. RELEASE.** Buyer and Seller release, quit claim and forever discharge, Broker and any cooperating real estate licensees, their contractors and employees
115. or any other person, corporation, or entity that may be liable by or through them, from any and all claims, losses or demands, including, but not limited to, per-
116. sonal injury and property damage, and the consequences thereof, known or not, that may arise from the presence of environmental hazards, or any defects or
117. conditions of or on the Property. Buyer and Seller acknowledge that Broker and any cooperating real estate licensees are acting as agents only, and will in no
118. case whatsoever be held liable either jointly or severally to either Buyer or Seller for the performance of any term or covenant of the Agreement of Sale or for
119. damages from failure to perform by any party. This Release shall survive settlement.

120. **25. REPRESENTATIONS.** Buyer and Seller agree that representations, claims, advertising and promotional activities, brochures, or documents of any kind
121. made by Seller, Broker, cooperating real estate licensees, or the employees/contractors of any of them, are not a part of the Agreement unless expressly stated
122. therein; nor have Buyer and Seller relied on such in entering into the Agreement. Buyer has inspected the Property or has waived the right to do so, and agrees
123. to purchase it in its present condition unless otherwise stated in the Agreement. Buyer and Seller acknowledge that Broker and cooperating licensees have not
124. determined whether the present or proposed use of the Property is lawful, nor have they performed an examination or assessment of the  general or
125. environmental condition of the Property, or of conditions existing in the locale where the Property is situate.

126. **26. ADDITIONAL DOCUMENTS:** Seller and Buyer agree to execute and deliver any documents reasonably necessary or desirable to carry out the terms
127. and conditions of this Sales Agreement.

128. **27. AUTHORITY:** The person(s) executing this Agreement on behalf of Buyer and Seller warrant and represent that they have all necessary power and
129. authority to execute, enter into, deliver and perform this Agreement.

130. **28. ASSIGNMENT:** This Agreement shall be binding upon the respective heirs, executors, administrators, successors and upon the assigns of the parties
131. hereto; provided, however, that unless otherwise expressly provided herein, the Buyer shall not transfer or assign Buyer's interest without the prior written
132. consent of Seller, which shall not be unreasonably withheld.

133.     IN WITNESS WHEREOF, INTENDING TO BE LEGALLY BOUND, the parties have caused this Agreement to be executed and delivered as of the day
134. and year first above written.

135. ATTEST/WITNESS                                          BUYER:

136. _Dean Cafiero_____                           Pennmark Harrisburg Holdings, LLC_____
137. _Dean Cafiero_                                          (Name of Corporation or partnership, if applicable)
138. By:_____
139.        (Title)                (SEAL)                    By:_____(SEAL)

140.                                                         Print Name: Robert A. Sichelstiel_____  Title: CEO____

141. ATTEST/WITNESS                                          SELLER:

142. _____                            Penn Center Harrisburg, L.P._____
143.                                                         (Name of Corporation or partnership, if applicable)
144. By:_____                           By:_____(SEAL)
145.        (Title)                (SEAL)                    Print Name:_____  Title:_____

146.                                                                                              NAI/CIR R6/05

PARTNER

BURTON D. MORRIS

Copyright - Commercial Industrial Realty Co. 2002

Case 1:23-bk-02771-HWV    Doc 64-1    Filed 02/01/24    Entered 02/01/24 16:54:59    Desc
Exhibit A    Page 17 of 35

# ADDENDUM TO AGREEMENT OF SALE

**THIS ADDENDUM** (this "Addendum") **TO SALES AGREEMENT** (the "Agreement") by and between Penn Center Harrisburg, L.P. ("Seller") and Pennmark Harrisburg Holdings, LLC ("Buyer"), concerning property located at 2601 N 3rd Street, 2643 N 3rd Street and 349 Wiconisco Street, Harrisburg, Dauphin County, Pennsylvania, as more fully described in Exhibit "A" attached hereto (the "Real Property").

This Addendum is with respect to the above Agreement.

Additional terms of the Agreement are as follows:

1.    The sale transaction set forth in the Agreement is subject to the approval of the United States Bankruptcy Court for the Middle District of Pennsylvania (the "Court") in the Bankruptcy Case of the Seller, Case No. 23-2771 (the "Case"). If such approval is not granted, the Agreement and this Addendum and shall be null and void ab initio and no terms contained therein and herein shall be binding on the parties.

2.    In addition to the sale of the Real Property, the sale transaction includes the sale and transfer of all equipment and furniture owned by the Seller and utilized at the Real Property and a 1999 Chevrolet Suburban, a 1998 Ford Pickup and a 2019 Ford F-250, owned by the Seller (the "Vehicles") and any and all other property of Seller, including any and all intangible property, rights and goodwill of Seller. At closing, all leases and contracts will be assigned by Seller to Buyer. Of the $2,650,000.00 sale consideration, $50,000.00 shall be allocated as the sale price for the Vehicles.

3.    The Real Property expressly includes any rights the Seller as owner of the Real Property has to those certain Cross Easement Agreement, Access and Parking Garage Easement Agreement and Walkway Easement Agreement (collectively, the "Easements") granted to the Seller by an entity Pinnacle Health Hospitals (PCH), now known as University of Pittsburgh Medical Center (UPMC) and recorded against title to the Real Property on December 30, 2004 in Book Number 5826 on Pages Number 322, 336 and 346, respectively.

4.    Seller shall submit a Motion for Court Approval (the "Sale Motion") of the sale set forth in the Agreement (as modified by this Addendum) on or before February 5, 2024, in which Sale Motion Seller will request (A) an expedited hearing as to an initial Order setting forth procedures for the sale and setting a final hearing on the sale to be held within fourteen (14) days of the date of the filing of the Sale Motion, and (B) that the final hearing be held on or before February 29, 2024.

5.      The Sale Motion shall also set forth standard terms with respect to a sale free and clear of all liens, claims and encumbrances under Section 363 of the United States Bankruptcy Code. The first bid over and above the initial bid of the Buyer of $2,650,000.00 shall be at least at a $75,000.00 increment, with all future bids to be at increments of at least $50,000.00. Closing under the Agreement shall occur on or before March 1, 2024, except in circumstances when bidding by other parties occurs, in which case the closing shall be extended by the duration of such bidding, not to exceed an additional thirty (30) days.

6.      In addition to any representations set forth in the Agreement, Seller represents there have been no material changes in the condition, occupancy or title to the Real Property (including to the Easements and other appurtenances of the Real Property) during the past ninety (90) days. Except for the Pennsylvania Department of State ("State") possibly vacating the Real Property and terminating its lease with Buyer, the sale is subject to the condition and occupancy of the Real Property remaining the same at closing under the Agreement. Buyer acknowledges that it has previously been informed that State is occupying its leased premises on a short-term basis, State is removing items and personnel from the Real Property, and has not renewed the State lease with Seller. Seller represents that as of the date hereof, State has not notified Seller that it was terminating the lease and vacating the Real Property. If State notifies Seller between the date hereof and closing that State will be vacating the Real Property, Buyer shall have the right to terminate this Agreement, in which circumstances the Deposit will be returned to Buyer and the Agreement and this Addendum shall terminate, except that the releases contained in paragraph 7 below shall survive such termination.

7.      As additional valuable consideration under the Agreement, Seller releases Buyer (which term for purposes of this paragraph shall be construed to include both Buyer and Pennmark Management Company 2.0, LLC and any other affiliates of Buyer) and Buyer releases Seller from any and all causes of action, rights and privileges which may exist under and pursuant to any prior agreements of sale between Seller and Buyer, as to any transactions between Seller and Buyer and any previous representations of Seller or Buyer, including, but not limited to, with respect to any prior sale or negotiation transactions involving the Real Property. It is further agreed that all prior agreements are null and void and are replaced by the current Agreement, and all other transactions between Seller and Buyer affiliates are terminated. Buyer shall release or satisfy a Writ of Summons and *Lis Pendens* filed by Buyer or its affiliate as to Seller. The releases contained in this paragraph shall survive the termination of the Agreement pursuant to paragraphs 6 or if Buyer is outbid by a different buyer/bidder pursuant to the rules set forth by the Court. However, the releases shall be null and void if the Agreement is deemed null and void.

8.     Except as set forth in this Addendum, all other terms and provisions of the Agreement not inconsistent herewith shall remain in full force and effect.

IN WITNESS WHEREOF, intending to be legally bound hereby, the undersigned have executed this Addendum as of January 30, 2024.

**PENN CENTER HARRISBURG, L.P.**

Burton Morris, Member of the General Partner Morris Real Estate Holdings, LLC

Michael Daley, Member of the General Partner Daley Real Estate Holdings, LLC

**PENNMARK HARRISBURG HOLDINGS, LLC**

Dean Cafiero

Dean Cafiero (Feb 1, 2024 15:46 EST)

Dean Cafiero

Robert Sichelstiel, CEO

# 2024-01-29 AOS and Adendum

Final Audit Report

| | |
|---|---|
| Created: | 2024-02-01 |
| By: | Andrew Mogilyansky (andrew@tupitza.law) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAfEE_CZmDvyKDMYRIQ2IvSnFrVNL1X4Jx |

## "2024-01-29 AOS and Adendum" History

📄 Document created by Andrew Mogilyansky (andrew@tupitza.law)
2024-02-01 - 8:33:10 PM GMT

📨 Document emailed to Robert Sichelstiel (bob@pennmark.com) for signature
2024-02-01 - 8:34:38 PM GMT

📨 Document emailed to dean@pennmark.com for signature
2024-02-01 - 8:34:38 PM GMT

📄 Email viewed by Robert Sichelstiel (bob@pennmark.com)
2024-02-01 - 8:35:37 PM GMT

🖉 Document e-signed by Robert Sichelstiel (bob@pennmark.com)
Signature Date: 2024-02-01 - 8:37:33 PM GMT - Time Source: server

📄 Email viewed by dean@pennmark.com
2024-02-01 - 8:45:56 PM GMT

🖉 Signer dean@pennmark.com entered name at signing as Dean Cafiero
2024-02-01 - 8:46:36 PM GMT

🖉 Document e-signed by Dean Cafiero (dean@pennmark.com)
Signature Date: 2024-02-01 - 8:46:38 PM GMT - Time Source: server

✅ Agreement completed.
2024-02-01 - 8:46:38 PM GMT

**Adobe Acrobat Sign**

## Exhibit A

All that certain tract of land being situated in The City of Harrisburg, Dauphin County, Pennsylvania known as Lot 1 of a subdivision of lands as prepared by H. Edward Black Associates, P.C., December 4, 2003, said plan being recorded in the Recorder of Deeds Office in Dauphin County, Pennsylvania, in Plan Book X, Volume 8, Page 31 on April 1, 2004. Said lot or tract of land being particularly bounded and described as follows:

Beginning at an iron pin, said iron pin being the north west corner of a property located at the south east corner of the intersection of North Fourth Street and Reel's Lane; thence S74°32'48"W, generally westbound across North Fourth Street a distance of 60.20 feet to a point; thence N20°9'00"W, generally northbound across Polyclinic Avenue a distance of 5187 feet to the True Point of Beginning; thence along the following courses and distances:

1) Along the northerly boundary of Lot 4 of a subdivision of lands as prepared by H. Edward Black Associates, P.C., December 4, 2003, said plan being recorded in the Recorder of Deeds Office in Dauphin County, Pennsylvania, in Plan Book X, Volume 8, Page 31 on April 1, 2004, formerly known as the Right of Way line of Polyclinic Avenue (Vacated by Ordinance 9 Bill 7), S85°17'17"W, a distance of 425.56 feet to a point;

2) thence along the easterly boundary of Lot 2 of a subdivision of lands as prepared by H. Edward Black Associates, P.C., December 4, 2003, said plan being recorded In the Recorder of Deeds Office in Dauphin County, Pennsylvania, in Plan Book X, Volume 8. Page 31 on April 1, 2004, N20*07'09"W, a distance of 449,48 feet to a point;

3) thence along the southerly boundary of same Lot 2, N69*52'51"E, a distance of 106.67 feet to a point;

4) thence along the easterly boundary of same Lot 2, N20*09'13"W, a distance of 228.99 feet to a point;

5) thence along the southerly Right of Way of Wisconisco Street, N69°50'47"E, a distance of 303.31 feet to a point;

6) thence along the westerly Right of Way of North Fourth Street, S20"09'00"E, a distance of 791,71 feet to the True Point of Beginning.


Having thereon erected three buildings known as One Penn Center, Two Penn Center and Three Penn Center, Harrisburg, Pennsylvania.

Being the same premises Pinnacle Health Hospitals, a Pennsylvania non-profit corporation, successor by merger to and name change from Harrisburg Polyclinic Hospital, granted and conveyed by confirmatory deed dated September 30, 2004, recorded October 13, 2004 in Dauphin County Record Book 5719 Page 509 unto Pinnacle Health Hospitals, Grantor herein.

Address(es) and parcel number(s) below are for informational purposes only and not for the purposes of insuring.

Commonly known as: 2601 3rd Street, 2643 3rd Street & 349 Wiconisco Street, Harrisburg, PA 17110

Parcel Number(s):  10-042-001

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:                    :    Case No. 23-bk-02771-HWV
    PENN CENTER HARRISBURG, L.P.    :
                Debtor         :         Chapter 11
                              :

PENN CENTER HARRISBURG, L.P.    :
           Movant          :
                              :
               v.               :
                              :
FULTON BANK, UPMC, CITY OF     :
HARRISBURG, DAUPHIN COUNTY TAX   :
CLAIM BUREAU, HARRISBURG CITY    :
SCHOOL DISTRICT               :
           Respondents     :
                              :

## NOTICE TO ALL CREDITORS AND OTHER PARTIES
## IN INTEREST OF DEBTOR'S MOTION TO APPROVE
## AUCTION SALE AND PROCEDURES

       Pursuant to Federal Rule of Bankruptcy Procedure 2002(a), Penn Center Harrisburg, L.P., ("Debtor") gives notice of a motion seeking authorization of an auction sale and sale procedures of the Debtor's Real Property, Personal Property and Vehicles (as defined in the Motion).

       ***YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE IN THIS BANKRUPTCY CASE. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.***

       NOTICE IS HEREBY GIVEN, as follows:

       1.      The Debtor has filed a motion to approve an auction sale and sale procedures (the "Sale Procedures Motion") with the United States Bankruptcy Court for the Middle District of Pennsylvania (the "Bankruptcy Court") requesting approval of the auction sale and sale procedures of Debtor's Real Property located at and known as 2601 N 3rd Street, 2643 N 3rd Street and 349 Wiconisco Street, Harrisburg, Dauphin County, Pennsylvania, Personal Property and Vehicles (the "Assets").

       2.      On or about January 31, 2024, Debtor entered into an Agreement of Sale (the "Agreement") with Pennmark Harrisburg Holdings, LLC ("Pennmark") for the total purchase price of $2,650,000.00. A copy of the Agreement is attached to the Sale Procedures Motion as Exhibit "A". The consideration of $2.600.000.00 is for the Real Property. The remaining $50,000.00 is the consideration for the Vehicles. The Personal Property has minimal value.

       3.      The Debtor, through NAI/CIR has been marketing the Assets for a period of time over a year. The Debtor, with the assistance of NAI/CIR, a prior broker and Ten-X, an auction

company, has been attempting to sell the Real Property. The Debtor intends to solicit higher and better offers, if any, and auction the Assets to additional potential buyers, subject to the terms and conditions of this Motion, and the Order approving the Procedures set forth herein.

4.      A hearing on the auction sale and bidding procedures and auction sale will be held on **February 6, 2024 at 10:00 a.m.**, in the United States Bankruptcy Court, 4th Floor, Courtroom 4B, 1501 North 6th Street, Harrisburg, Pennsylvania.

5.      If Pennmark is the only offer received for the purchase of the Assets, the Debtor will file a Motion requesting approval of the buyer at a final hearing (the "Final Hearing").

6.      If there is more than one bidder for the Assets, following the auction being conducted, the Debtor will file a Motion requesting approval of the "Successful Bidder at the Final Hearing.

7.      In the Sale Procedures Motion, the Debtor sets forth its intent to auction the Debtor's Assets and the procedures in connection with such sale. The Sale Procedures Motion sets forth the proposed sale in detail. Some of the important terms are set forth in this Notice. All parties may review the Sale Procedures Motion as set forth below.

8.      The Court is requested to enter an Order approving the sale procedures in the Sale Motion (the "Procedures Order"). Such procedures are set forth below. If there are any discrepancies between this Notice and the Order entered approving the Sale Procedures, the Sale Procedures Order shall control.

9.      At the Final Hearing as to the Successful Bidder, the Assets may be sold pursuant to 11 U.S.C. §363(f), free and clear of any liens, claims, interest and encumbrances of every kind or nature whatsoever.

10.     The procedures for the sale are as follows:

a.      The Debtor intends to expose the Assets to offers and bids, subject to the terms set forth in this Motion and the Order approving this Motion. The Debtor proposes that such offers shall be solicited for the period up until 2:00 p.m. on February 19, 2024.

b.      Up until 2:00 p.m. on February 19, 2024, the Debtor will accept all offers for purchase of the Assets from third parties. Such offers must be made in writing. All offers are to be submitted to Nikolas S. Sgagias at NAI/CIR by electronic mail at nsgagias@naicir.com, with a copy to Robert E. Chernicoff, Esquire, 2320 North Second Street, Harrisburg, Pennsylvania, rec@cclawpc.com, (717) 238-6570, such to be received no later than 2:00 p.m., February 19, 2024.

c.      In the event there is more than one party providing offers as set forth above, an auction will be conducted telephonically or via Zoom at 12:00 p.m., on February 25, 2024. Any party who wishes to bid may participate and shall arrange for such participation through Nikolas Sgagias at NAI/CIR.

d.    A hearing to approve the sale procedures set forth in this Motion will be held on February 6, 2024 at 10:00 a.m. (the "Procedure Hearing"), with a final hearing on approval of the Successful Bidder to occur on February 27, 2024 at _____ a/p.m. (the "Final Hearing").

e.    All offers to be submitted as set forth in this Motion must contain proof of financial ability to close on the transaction and shall not be subject to any financing or other such contingencies or due diligence period of time and, thus, all offers shall be without contingencies, except for approval of the Bankruptcy Court at the Final Hearing, and Fulton, if the proposed sale is not paying the Fulton Loans in full.

f.    At such auction, all bids higher than the first bid is to be made in an increment of least $75,000.00.  Subsequent bids are to be in increments of at least $50,000.00.  All bids shall occur on an open basis with all material terms of each bid being fully disclosed to all bidders.  Nonetheless, the Debtor reserves the right to change the amount of the increments.  In addition, following the auction, the Debtor reserves the right to continue to negotiate with bidders.

g.    All parties making offers must post a Fifty Thousand Dollar ($50,000.00) deposit , with proof of funding, and enter into an Agreement of Sale acceptable to the Debtor.

h.    Closing must occur within thirty (30) days after the entry by the Court of an Order approving the Successful Bidder, and approved by Fulton, if the proposed sale is not paying the Fulton Loans in full.

i.    Following the auction set forth above, at the Final Hearing, as set by the Court, the Debtor will present the highest and best offer and request an Order, by filing a Motion and Sale Report, approving the Successful Bidder (the "Sale Report").  The Debtor will also present such other and further pleadings as may be necessary to approve the Successful Bidder.  The Debtor may also identify a backup bidder.

j.    Following the filing of the Motion and Sale Report, all creditors shall have an opportunity to object to the Successful Bidder, until February 22, 2024.

11.    Fulton Bank shall have the right to credit bid up to the amount of its secured Claim.

12.    Capitalized words or phrases used but not defined herein shall have the meaning ascribed to them in the Sale Procedures Motion.

13.    The name and address of the Debtor, which is the seller of the Assets is:

Penn Center Harrisburg, LP
P.O. Box 5810
Harrisburg, PA 17110

14. Copies of the Motion and the exhibit(s) thereto, as the same may have been revised, if at all, may be (a) reviewed during regular Court hours at the United States Bankruptcy Court for the Middle District of Pennsylvania at 1501 North 6th Street, Bankruptcy Courtroom 4B, 4th Floor, Harrisburg, Pennsylvania; or (b) obtained from Robert E. Chernicoff, Esquire, Cunningham, Chernicoff & Warshawsky, P.C., (counsel for the Debtor), 2320 North Second Street, Harrisburg, PA 17110, rec@cclawpc.com.

15. All inquiries related to the sale concerning the Assets being sold, and/or requests to inspect or examine the Assets shall be directed to Nikolas S. Sgagias at NAI/CIR by electronic mail at nsgagias@naicir.com.

16. If no objections are timely filed with the Clerk of the Bankruptcy Court at the address listed below to the Motion on or before **February 5, 2024,** the Court may enter an Order approving the Auction Sale Procedures Motion. Any Objection must conform to the Rules of Bankruptcy Procedure. Any objecting party must appear at the Hearing set forth above.

17. The Debtor has requested that the Court schedule a Final Hearing as to the results of the auction on **February 27, 2024, at _____ a/p.m.,** in the United States Bankruptcy Court, 1501 North 6th Street, 4th Floor, Courtroom 4B, Harrisburg, Pennsylvania. At the hearing, the Debtor will present the highest and best offer as to the Assets.

18. As set forth above, the Debtor will file a further report or motion setting forth the Successful Bidder (as defined in the Motion) and as to final distribution of the sale proceeds.

CLERK
UNITED STATES BANKRUPTCY COURT
THE SYLVIA H. RAMBO US COURTHOUSE
1501 NORTH 6TH STREET
BANKRUPTCY COURTROOM 4B, 4TH FLOOR
HARRISBURG, PA 17102

Dated:

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | Case No. 23-bk-02771-HWV |
| PENN CENTER HARRISBURG, L.P. | : | |
| Debtor | : | Chapter 11 |
| | : | |
| | | |
| PENN CENTER HARRISBURG, L.P. | : | |
| Movant | : | |
| | : | |
| v. | : | |
| | : | |
| FULTON BANK, UPMC, CITY OF | : | |
| HARRISBURG, DAUPHIN COUNTY | : | |
| TAX CLAIM BUREAU, | : | |
| HARRISBURG CITY SCHOOL | : | |
| DISTRICT | : | |
| Respondents | : | |

**NOTICE TO ALL CREDITORS AND OTHER PARTIES
IN INTEREST OF FINAL HEARING ON THE MOTION
TO APPROVE SALE OF REAL PROPERTY FREE AND CLEAR OF
ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS**

Pursuant to Federal Rule of Bankruptcy Procedure 2002(a), Penn Center Harrisburg, L.P., ("Debtor') gives notice of the proposed sale and hearing on a Motion (the "Sale Motion") seeking authorization to sell the Assets (as defined in the Sale Motion), and setting the procedures for such sale, free and clear of liens, claims, encumbrances and other interests.

*YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE IN THIS BANKRUPTCY CASE. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE. ALL TERMS NOT DEFINED IN THIS NOTICE SHALL BE DEFINED AS SET FORTH IN THE SALE MOTION OR THE SALE PROCEDURES ORDER, THE PROCEDURES OF THE SALE SHALL BE AS SET FORTH IN THE SALE MOTION OR SALE PROCEDURES ORDER.*

NOTICE IS HEREBY GIVEN, as follows:

1. Debtor has filed a motion to approve a sale (the "Sale Motion") with the United States Bankruptcy Court for the Middle District of Pennsylvania (the "Bankruptcy Court") requesting approval of the sale of the Debtor's Assets (as defined in the Sale Motion).

2. On or about January 31, 2024, Debtor entered into an Agreement of Sale (the "Agreement") with Pennmark Harrisburg Holdings, LLC ("Pennmark") for the total purchase price of $2,650,000.00. A copy of the Agreement is attached to the Sale Procedures Motion as

Exhibit "A".  The consideration of $2.600.000.00 is for the Real Property.  The remaining $50,000.00 is the consideration for the Vehicles.  The Personal Property has minimal value.

3.      The Debtor, through NAI/CIR has been marketing the Assets for a period of time over a year.  The Debtor, with the assistance of NAI/CIR, a prior broker and Ten-X, an auction company, has been attempting to sell the Real Property.  The Debtor intends to solicit higher and better offers, if any, and auction the Assets to additional potential buyers, subject to the terms and conditions of this Motion, and the Order approving the Procedures set forth herein.

4.      If Pennmark is the only offer received for the purchase of the Assets, the Debtor will file a Motion requesting approval of the buyer at a final hearing (the "Final Hearing").

5.      If there is more than one bidder for the Assets, following the auction being conducted, the Debtor will file a Motion requesting approval Successful Bidder at the Final Hearing.

6.      The Court has entered an Order (the "Sale Procedures Order") approving the sale procedures for the sale transaction.  The Sale Procedures Order includes terms for the sale and bids for the Assets.  A summary of such terms are set forth below.   Interested parties are urged to read the Sale Procedures Order and Sale Motion.

7.      The procedures for the sale are as follows:

a.      The Debtor intends to expose the Assets to offers and bids, subject to the terms set forth in this Motion and the Order approving this Motion.  The Debtor proposes that such offers shall be solicited for the period up until 2:00 p.m. on February 19, 2024.

b.      Up until 2:00 p.m. on February 19, 2024, the Debtor will accept all offers for purchase of the Assets from third parties.  Such offers must be made in writing.  All offers are to be submitted to Nikolas S. Sgagias at NAI/CIR by electronic mail at nsgagias@naicir.com, with a copy to Robert E. Chernicoff, Esquire, 2320 North Second Street, Harrisburg, Pennsylvania, rec@cclawpc.com, (717) 238-6570, such to be received no later than 2:00 p.m., February 19, 2024.

c.      In the event there is more than one party providing offers as set forth above, an auction will be conducted telephonically or via Zoom at 12:00 p.m., on February 25, 2024.  Any party who wishes to bid may participate and shall arrange for such participation through Nikolas Sgagias at NAI/CIR.

d.      A hearing to approve the sale procedures set forth in this Motion will be held on February 6, 2024 at 10:00 a.m. (the "Procedure Hearing"), with a final hearing on approval of the Successful Bidder to occur on February 27, 2024 at _____ a/p.m. (the "Final Hearing").

e.      All offers to be submitted as set forth in this Motion must contain proof of financial ability to close on the transaction and shall not be subject to any financing or other

such contingencies or due diligence period of time and, thus, all offers shall be without contingencies, except for approval of the Bankruptcy Court at the Final Hearing, and Fulton, if the proposed sale is not paying the Fulton Loans in full.

      f.    At such auction, all bids higher than the first bid is to be made in an increment of least $75,000.00. Subsequent bids are to be in increments of at least $50,000.00. All bids shall occur on an open basis with all material terms of each bid being fully disclosed to all bidders. Nonetheless, the Debtor reserves the right to change the amount of the increments. In addition, following the auction, the Debtor reserves the right to continue to negotiate with bidders.

      g.    All parties making offers must post a Fifty Thousand Dollar ($50,000.00) deposit , with proof of funding, and enter into an Agreement of Sale acceptable to the Debtor.

      h.    Closing must occur within thirty (30) days after the entry by the Court of an Order approving the Successful Bidder, and approved by Fulton, if the proposed sale is not paying the Fulton Loans in full.

      i.    Following the auction set forth above, at the Final Hearing, as set by the Court, the Debtor will present the highest and best offer and request an Order, by filing a Motion and Sale Report, approving the Successful Bidder (the "Sale Report"). The Debtor will also present such other and further pleadings as may be necessary to approve the Successful Bidder. The Debtor may also identify a backup bidder.

      j.    Following the filing of the Motion and Sale Report, all creditors shall have an opportunity to object to the Successful Bidder, until February 22, 2024.

8.    Capitalized words or phrases used but not defined herein shall have the meaning ascribed to them in the Sale Procedures Motion.

9.    Debtor proposes to pay costs and expenses associated with the sale of the Real Property at Closing as follows:

      a.    Any notarization or incidental filing charges required to be paid by Debtor as seller.

      b.    All other costs and charges apportioned to Debtor, as seller, under the documents contemplated thereby.

      c.    All costs associated with the preparation of the conveyance instruments and normal services with respect to closing, including payment of a total of $25,000.00, on account of legal fees and expenses owed to Cunningham, Chernicoff & Warshawsky, P.C., Debtor's counsel in connection with implementation of the sale, the presentation and pursuit of this Motion, consummation of the sale, and otherwise in connection with this case, and subject to such approval by the Court of such fees and expenses. In the event fees and expenses are not approved by the

Court at the time of closing on the sale, any fees and expenses not approved will be escrowed by Cunningham, Chernicoff & Warshawsky, P.C..

    d. Past due real estate taxes and present real estate taxes pro rated to the date of closing on the sale.

    e. Past due and present municipal charges and liens, pro rated, to the date of closing on the sale.

    f. All transfer taxes which may be owed on account of the transaction shall be paid by the Successful Bidder.

    g. Payment of four percent (4%) commission of the total purchase price payable NAI/CIR.

    h. A Breakup Fee of $75,000.00 in the event Pennmark is not the Successful Bidder.

    i. Payment of all United States Trustee Fees incurred pursuant to the sale payable to the United States Trustee.

10. After payment of the costs and expenses as set forth above, the net proceeds from the sale of the Real Property, shall first be paid to Fulton Bank up to the full amount owed on the Fulton Loans, as secured on the Real Property.

11. After payment of the costs and expenses as set forth above, the balance of the proceeds, including the allocation of the purchase price of the Vehicles, shall be held for distribution under a liquidating Plan of Reorganization, in the order of priority under the Bankruptcy Code.

12. In the event there is a dispute as to the disposition of any sale proceeds, net of the aforesaid costs of sale identified above, or as to the costs proposed to be paid herein, then the sale shall proceed, and following closing of the sale, any disputed proceeds shall be deposited in escrow by the Debtor's bankruptcy counsel, Cunningham, Chernicoff & Warshawsky, P.C., pending further Order of this Court.

13. The name and address of the Debtor, which is the seller of the Real Property is:

Uptown Partners, LP
c/o Landex Development
4030 Rhode Island Avenue
Brentwood, MD 20722

14. Copies of the Motion and the exhibit(s) thereto, as the same may have been revised, if at all, may be (a) reviewed during regular Court hours at the United States Bankruptcy Court for the Middle District of Pennsylvania at 1501 North 6th Street, Bankruptcy Courtroom 4B, 4th Floor,

Harrisburg, Pennsylvania; or (b) obtained from Robert E. Chernicoff, Esquire, Cunningham, Chernicoff & Warshawsky, P.C., (counsel for the Debtor), 2320 North Second Street, Harrisburg, PA 17110, rec@cclawpc.com.

15.     All inquiries related to the sale concerning the Assets being sold, and/or requests to inspect or examine the Assets shall be directed to Nikolas S. Sgagias at NAI/CIR by electronic mail at nsgagias@naicir.com.

16.     If no objections are timely filed with the Clerk of the Bankruptcy Court at the address listed below to the Motion on or before **February 22, 2024,** the Court may enter an Order approving the Auction Sale Procedures Motion.  Any Objection must conform to the Rules of Bankruptcy Procedure.  Any objecting party must appear at the Hearing set forth above.

17.     As set forth above, the Debtor will file a further report or motion setting forth the Successful Bidder (as defined in the Motion) and as to final distribution of the sale proceeds.

18.     Any Objection filed as to the Sale Motion must conform to the Rules of Bankruptcy Procedure.  Any objecting party must appear at the Hearing set forth above.

19.     All objections to the sale shall be made on or before three (3) days prior to the Final Hearing.

> CLERK
> UNITED STATES BANKRUPTCY COURT
> THE SYLVIA H. RAMBO US COURTHOUSE
> 1501 NORTH 6TH STREET
> BANKRUPTCY COURTROOM 4B, 4TH FLOOR
> HARRISBURG, PA 17102

Dated:

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | Case No. 23-bk-02771-HWV |
|   PENN CENTER HARRISBURG, L.P. | : | |
| Debtor | : | Chapter 11 |
| | : | |
| | | |
| PENN CENTER HARRISBURG, L.P. | : | |
| Movant | : | |
| | : | |
| v. | : | |
| | : | |
| FULTON BANK, UPMC, CITY OF | : | |
| HARRISBURG, DAUPHIN COUNTY | : | |
| TAX CLAIM BUREAU, HARRISBURG | : | |
| CITY SCHOOL DISTRICT | : | |
| Respondents | : | |
| | : | |

## ORDER APPROVING DEBTORS' SALE PROCEDURES
## AND SETTING A FINAL SALE HEARING

This matter having come before the Court on the motion (the "Motion") of Penn Center Harrisburg, L.P. ("Debtor"), by and through its Bankruptcy Counsel, Cunningham, Chernicoff & Warshawsky, P.C., for the entry of an order requesting approval of the auction sale and sale procedures regarding the Debtor's Real Property, Personal Property and Vehicles (as defined in the Motion) (the "Assets") granting related relief pursuant to Sections 105, 363(b), (f), (k), (m), and (n), and 365 of Title 11 of the United States Code (the "Bankruptcy Code" or "Code") and Rules 202, 6004, 6006, 9013, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

The Court has further considered the Motion and the matters reflected in the record of the hearing held on the Motion. All capitalized terms used herein not otherwise defined have the meanings ascribed to them in the Motion. It appears that the Court has jurisdiction over this proceeding; that this is a core proceeding; that notice of the Motion has been provided to all interested parties and upon any entity that asserts a lien or interest in the Real Property by U.S. Mail and by the ECF system, and is due and sufficient in all regards; that the relief sought in the Motion as to the procedures is in the best interests of the Debtors' bankruptcy estate and the creditors thereof; and that good and sufficient cause exists for such relief.

## THE COURT HEREBY FINDS AND CONCLUDES THAT:

A.      Debtor is a debtor under Chapter 11 of the Code.

B.      This Court has jurisdiction over Debtor, all of Debtor's Assets (as defined in the Motion), wherever located, and all creditors of Debtor. This Court has jurisdiction to hear and to rule upon the Motion, and the Motion constitutes a core proceeding pursuant to 28 U.S.C. §157(b)(2).

C.      Notice regarding the Motion and the relief as to the procedures requested in the Motion has been made in accordance with the Bankruptcy Rules, and the Local Rules of the United States Bankruptcy Court for the Middle District of Pennsylvania.

D.      Reasonable opportunity to object to, or be heard regarding, the relief requested in the Motion as to the procedures has been afforded to all interested persons and entities, including but not limited to all creditors and all parties who claim interests in or liens against the Assets.

E.      The relief sought in the Motion as to the procedures is in the best interest of this estate, its creditors, and all parties in interest.

**THE COURT HEREBY ORDERS THAT:**

1.      The auction sale and bidding procedures set forth in the Motion, and as set forth hereinafter are approved.

2.      The bidding procedures are reasonably designed to maximize the value to be achieved for the Debtor's Assets.

3.      The sale procedures are approved as follows:

a.      The Debtor intends to expose the Assets to offers and bids, subject to the terms set forth in this Motion and the Order approving this Motion. The Debtor proposes that such offers shall be solicited for the period up until 2:00 p.m. on February 19, 2024.

b.      Up until 2:00 p.m. on February 19, 2024, the Debtor will accept all offers for purchase of the Assets from third parties. Such offers must be made in writing. All offers are to be submitted to Nikolas S. Sgagias at NAI/CIR by electronic mail at nsgagias@naicir.com, with a copy to Robert E. Chernicoff, Esquire, 2320 North Second Street, Harrisburg, Pennsylvania, rec@cclawpc.com, (717) 238-6570, such to be received no later than 2:00 p.m., February 19, 2024.

c.      In the event there is more than one party providing offers as set forth above, an auction will be conducted telephonically or via Zoom at 12:00 p.m., on February 25, 2024. Any party who wishes to bid may participate and shall arrange for such participation through Nikolas Sgagias at NAI/CIR.

d.    A hearing to approve the sale procedures set forth in this Motion will be held on February 6, 2024 at 10:00 a.m. (the "Procedure Hearing"), with a final hearing on approval of the Successful Bidder to occur on February 27, 2024 at _____ a/p.m. (the "Final Hearing").

e.    All offers to be submitted as set forth in this Motion must contain proof of financial ability to close on the transaction and shall not be subject to any financing or other such contingencies or due diligence period of time and, thus, all offers shall be without contingencies, except for approval of the Bankruptcy Court at the Final Hearing, and Fulton, if the proposed sale is not paying the Fulton Loans in full.

f.    At such auction, all bids higher than the first bid is to be made in an increment of least $75,000.00.  Subsequent bids are to be in increments of at least $50,000.00.  All bids shall occur on an open basis with all material terms of each bid being fully disclosed to all bidders.  Nonetheless, the Debtor reserves the right to change the amount of the increments.  In addition, following the auction, the Debtor reserves the right to continue to negotiate with bidders.

g.    All parties making offers must post a Fifty Thousand Dollar ($50,000.00) deposit, with proof of funding, and enter into an Agreement of Sale acceptable to the Debtor.

h.    Closing must occur within thirty (30) days after the entry by the Court of an Order approving the Successful Bidder, and approved by Fulton, if the proposed sale is not paying the Fulton Loans in full.

i.    Following the auction set forth above, at the Final Hearing, as set by the Court, the Debtor will present the highest and best offer and request an Order, by filing a Motion and Sale Report, approving the Successful Bidder (the "Sale Report").  The Debtor will also present such other and further pleadings as may be necessary to approve the Successful Bidder.  The Debtor may also identify a backup bidder.

j.    Following the filing of the Sale Report, all creditors shall have an opportunity to object to the Successful Bidder, until February 22, 2024.

4.    The Final Hearing on the Sale Motion is currently scheduled for **February 27, 2024 at _____ a/p.m.** in the United States Bankruptcy Court, 4th Floor, Courtroom 4B, 1501 North 6th Street, Harrisburg, Pennsylvania. The Final Hearing shall be subject to such continuance as the Court may order. At such hearing, the Successful Bidder will be presented, as will the Debtor's request that the sale to the Successful Bidder be free and clear of all liens, claims and encumbrances.

5.        Following the Auction Sale to be conducted by the Debtor on February 25, 2024, the Debtor shall file a Motion and Report of Sale, a Proposed Final Sale Order, and any such Motion as is necessary to approve the final purchaser and the Debtor shall request all provisions required to appropriately transfer the Assets free and clear of all liens, claims, encumbrances and other interests.